H. E. MOSS v. LLOYD C. GRISCOM.

163 So. 583.

Opinion Filed October 21, 1935.

*Clyde W. Atkinson,* for Palintiff in Error;

*Chas. S. Ausley,* for Defendant in Error.

BUFORD, J.—The appeal in this case brings for review a decree of the Circuit Court of Leon County and final decree wherein it was adjudicated against the appellant who was the defendant in the court below, as follows:

"IT IS ORDERED, ADJUDGED AND DECREED That the said defendant, H. E. Moss, his heirs and assigns forever, and that each of them are enjoined on the condition hereinafter stated from cutting and/or removing any pine timber from, or causing pine timber to be cut or removed from the fol-

lowing described lands of the plaintiff, situate, lying and being in Leon County, Florida, and more particularly described as follows, to-wit:"

Then follows description of the lands upon which the standing timber involved is situated.

The decree provides:

"Provided, however, that if the said defendant, H. E. Moss, can produce before this Court within ninety (90) days from the date hereof a *bona fide* purchaser, who will pay the market price for the pine timber located on the hereinabove described premises, the same to be not less than the price paid for said timber to complainant on April 14, 1931, by the Elberta Crate and Box Company, a corporation organized and existing under and by virtue of the laws of the State of Florida, that then and in such event the said defendant shall have the right to continue under his said contract to deliver said pine timber as provided for in his said contract of April 14, 1931, and shall have the privilege to cut and haul said pine timber as shall not have been reserved by complainant which were marked and so reserved, cut in dimensions from said land upon the terms and conditions as set forth in the contract between the plaintiff's agent, B. K. Eaton, and the said defendant, H. E. Moss, bearing date the 14th day of April, A. D. 1931, and contract of purchase between complainant and purchaser.

"Further that temporary injunction heretofore entered in the above entitled cause be and the same is hereby dissolved, except as hereinabove stated, relating to pine timber."

There are further provisions in the decree which are not material here.

The contract upon which Moss sought relief was as follows:

"This Indenture, Made and entered into this the 14th

day of April, A. D. 1931, between Lloyd C. Griscom, by and through his manager, B. K. Eaton, of Leon County, Florida, party of the first part and H. E. Moss of Leon County, Florida, party of the second part, WITNESSETH:

· *Whereas,* the said party of the first part has sold all of the hickory timber located on the P. W. Wilson Plantation in Leon County, Florida, to a certain mill in Quincy, Gadsden County, Florida; and whereas, said party of the first part has sold all of his gum and pine timber located on the P. W. Wilson Plantation in Leon County, Florida, to Simmons Crate Company of Tallahassee, Leon County, Florida, it becomes necessary to convey said above mentioned timber to the respective locations.

"It is hereby agreed between the party of the first part and the party of the second part, that the said party of the second part will haul and convey the hickory timber located on the said P. W. Wilson Plantation to that certain mill to which said timber was sold, at Quincy, Florida, for Twenty ($20.00) Dollars per thousand feet and will haul the gum timber sold to Simmons Crate Company at Tallahassee, Leon County, Florida, for Ten Dollars ($10.50) and Fifty Cents per thousand feet and will haul the pine timber sold to Simmons Crate Company in Tallahassee, Leon County, Florida, for Eight ($8.00) Dollars per thousand feet.

"It is further agreed by and between the parties hereto that the above mentioned timber shall be cut and conveyed in dimensions to meet the requirements of the respective mills to whom the said party of the first part is selling said timber.

"It is further agreed between the parties hereto that should either of the above mentioned mills discontinue their operations before the purchase of all of the timber as

above described or should they discontinue their demand for said timber, the said party of the second part or said party of the first part shall have the privilege of selling said timber to any other purchaser or purchasers for sum not less than sum paid by the parties who are now purchasers of said timber and shall receive the compensation hereinabove mentioned for preparing and hauling said timber to the other purchaser or purchasers, and the sellers shall receive all the purchase price therefor.

"It is further agreed by and between the parties hereto that when a market is found for the sale of the oak timber located on the said plantation hereinabove described, that the said party of the second part shall also prepare and convey said timber to the respective purchaser or purchasers, in compliance with their requirements for the sum of Ten Dollars ($10.50) and Fifty Cents per thousand feet, provided the purchasers thereof shall be located at no greater distance from the said P. W. Wilson Plantation than Tallahassee or Quincy, Florida, is located."

The record shows that Moss was not a party to the sales agreement between Griscom and the mill operators and was not advised as to its terms or the prices named therein.

The record shows that after this contract was made and while Moss was executing the contract, the party referred to in the contract as Simmons Crate Company of Tallahassee, which was in fact Simmons-Hector Crate Company and later had its name changed to Elberta Crate and Box Company, by two negotiations with the complainant, Griscom, reduced the price of pine blocks from $16.00 per thousand to $14.50 per thousand and later to $12.50 per thousand. After the price was reduced to $12.50 per thousand a considerable lot of timber was delivered and then while the timber was still being delivered Elberta Crate and Box Com-

pany advised B. K. Eaton, manager for Griscom, by letter as follows:

"Tallahassee, Fla., Feb. 13, 1933.

"Mr. B. K. Eaton, Manager Luna Plantation,

"Tallahassee, Fla.

"Dear Sir:

"In reply to yours of recent date, wish to advise you that as far as we are concerned we consider our letter-contract dated May 15th, 1930, fulfilled by you and ourselves, and hereby take this method of terminating the said letter-contract."

Affidavit of H. H. Hinote, bookkeeper for Elberta Crate & Box Company, made on the 18th day of April, 1933, that "the maximum price paid by said corporation at the present time for all sawmill logs which may be cut from clear or knotty timber in specified lengths of ten (10), twelve (12), fourteen (14), or sixteen (16) feet, as may be required to handle the timber with the waste, is $10.00 No. 1 to 15", $9.00 No. 1 over 15", $7.00 No. 2 per thousand and on all blocks (12) inches and up in diameter, clear of knots, hollows in excess of three (3) inches, or shakes that impair the strength of the wood cut in specified lengths of fifty-one (51) inches, or fifty-nine (59) inches from pine, is $10.50 per thousand; and for all blocks from clear, straight grain poplar or long-leaf pine, cut in lengths, thirty-two (32) inches long, $11.50 per thousand."

Mr. Minote testified in regard to the letter above quoted as follows:

"Q. Then, Mr. Hinote, you admit that you don't know anything about the letter of which you wrote and which you refer to specifically to that contract of May 15, 1930.

"A. Well, yes, inasmuch as we were satisfied to cease taking any timber from Mr. Moss and any other party.

As far as that is concerned, we were willing to consider any contract that might exist terminated. It was agreeable with Mr. Simmons and Mr. Simmons will probably tell you that it was satisfactory to terminate anything that might be contained in any agreement.

"Q. Do you know whether or not anyone acting for the Elberta Crate and Box Company was asking to terminate this contract and give them that in writing?

"Complainant objects to that question on the ground that Mr. Hinote can answer for no one but himself.

"A. Yes, someone evidently asked me for this information here. I don't recall just who it was. We don't usually use a letter like this letter unless we have a request for it and evidently it was Mr. Eaton, for it was addressed to him personally.

"Q. Mr. Hinote, do you recall Mr. Eaton discussing with you this contract and the writing of this letter subsequent to the time this contract of May 15, 1930, was entered into and prior to the time this letter of Febraury 13, 1933, was written.

"Complainant objects to that question on the ground that it is immaterial and irrelevent, because whatever the reason was for the writing of the letter is not a proper subject of inquiry. The letter being the best evidence as to their intentions.

"By Mr. Atkinson: For the information of the court, the purpose of that question is to show that this contract was not breached by the Elberta Crate and Box Company, but that the plaintiff in this case asked that this contract be terminated to give them a basis of breaking the contract with this defendant, H. E. Moss.

"A. Well, on several different occasions Mr. Eaton has talked about the contract in our office, as well as Mr. Moss,

at various times. I don't recall anything in particular at any time, any particular feature about it that was discussed.

"Q. Did Mr. Eaton ask you, as agent, or anyone else representing the Elberta Crate and Box Company in your presence, not to take any more timber from H. E. Moss?

"A. I don't recall. I could not say positively that he did or did not.

"Q. Then Mr. Hinote, this letter of February 13, 1933, was written in compliance with a request from somebody?

"A. Yes. That letter was not written in an effort or at the instance of the Alberta Crate and Box Company without having been in compliance with the request of the addressee of the letter?

"Complainant objects to that question and answer and all other questions and answers in regard to the letter and moves to strike the same on the grounds hereinabove interposed.

"Q. Then, Mr. Hinote, this letter in which it is stated that: 'In reply to yours of recent date which you advise that as far as we are concerned that we consider our letter-contract, dated May 15, 1930, fulfilled by you and our-selves and hereby take this method of terminating the said letter-contract,' and was terminated at the request and that statement in which you say that the contract was fulfilled was stated at the instance or by the request of someone else?

"A. Yes.

"Complainant renews the above objections annd moves to strike the above question and answer.

"Q. Mr. Hinote, do you know whether or not the Elberta Crate and Box Company has refused to take any more pine or gum timber from the Wilson Plantation?

"A. No, they have not refused to take any."

So it appears that Elberta Crate and Box Company was still willing to take the timber referred to in the Moss contract at the prevailing prices. The contract between Simmons-Hector Crate Company and Griscom, if it could be called a contract between them, was evidenced by letter as follows:

"May 15, 1930.

"Mr. B. K. Eaton, Manager Luna Plantation,
"Tallahassee, Florida.

"Dear Sir:

"In consideration of your furnishing us blocks, and/or short length logs, according to our specifications, we agree to pay you therefor as follows, to-wit:

"Sixteen dollars ($16.00) per 1000 feet on all blocks 12 inches and up in diameter, clear of knots, hollows in excess of three inches, or shakes that impair the strength of the wood cut in specified lengths of 51 or 59 inches from pine, bay, magnolia, poplar, gum, ash, cherry, elm and other woods as may be specified by ourselves.

"Nineteen Dollars ($19.00) per 1,000 feet for all blocks cut from straight grain bay and magnolia, clear of all knots, and cut forty inches long.

"Twenty dollars ($20.00) per 1,000 feet for all blocks from clear, straight grain poplar or long leaf pine, cut in lengths thirty-two inches long.

"Twelve and 50/100 Dollars (12.50) per 1,000 feet on all pine sawmill logs which may be cut from clear or knotty timber in specified lengths of ten, twelve, fourteen or sixteen feet, as may be required to handle the timber without waste. We reserve the right to indicate the amount and class of material which you are to deliver to us, otherwise deliveries to be made in such manner as most efficiently to utilize the equipment which you propose to use. Estimates

will be made up by us and furnished on Thursday afternoon, and check given for blocks furnished through the preceding day in each week.

"Prices quoted are F. O. B. our yards.

"We reserve the right in the event business conditions warrant operation on part time or complete shutdown, of requesting you to suspennd your operation until such time as we resume our own operations.

"This letter shall operate as a contract upon its acceptance by you.

"Yours very truly,<br>
"Simmons-Hector Crate Company,<br>
"By Jack W. Simmons,<br>
"<em>Secretary-Treasurer.</em>

"Accepted: B. K. Eaton, <em>Manager.</em>"

At the time testimony was taken in this case Mr. Jack W. Simmons, President of Elberta Crate and Box Company, testified as follows:

"Q. Mr. Simmons, are you the President of the Elberta Crate and Box Company?

"A. I am.

"Q. Do you have a list of the present prices which you are paying for timber, which is now being bought by the Elberta Crate and Box Company?

"A. The schedule on blocks in 51" and 59" lengths is $12.50 per thousand feet delivered on our yard.

"Q. What kind of blocks do you refer to?

"A. All pine and hardwood blocks, according to our specifications: 40" blocks $13.00, 32" blocks $13.50. All logs, long leaf and cypress No. 1 logs $14.00. Long leaf and cypress No. 2 logs $11.00. Short leaf and hardwood No. 1 logs $12.00. Short leaf and hardwood No. 2 $9.00. That is complete list at the present prices.

"Q. You have increased the price of that timber during the past several months, have you not?

"A. Yes sir.

"Q. It is very likely that the price will continue to increase sometime yet?

"A. We think so.

So much of evidence has been set out to show that at the time of the entry of the decree Elberta Crate and Box Company was paying as much or more for pine blocks and logs that it was paying at the time of the alleged termination of the contract between Mr. Griscom and that company and that the company was then ready and willing to take pine logs and blocks at the price which the testimony of Mr. Simmons showed it was then paying, while that price was not as much as that agreed upon in the original contract; yet, it was as much or more than the price which had been paid to and accepted by Griscom and Griscom had acquiesced by continuing deliveries after two reductions in price. But the contract between Griscom and Moss did not depend for its execution on the continuation of the Crate Company paying the prices which it had agreed to pay. The contract between the complainant and the defendant in regard to pine timber (and that is all we are concerned with here) provided as follows:

"It is further agreed between the parties hereto that should either of the above mentioned mills discontinue their operations before they purchase all of the timber as above described or should they discontinue their demand for said timber, the said party of the second part or said party of the first part shall have the privilege of selling said timber to any other purchaser or purchasers for sum not less than sum paid by the parties who are now purchasers of said timber and shall receive the compensation hereinabove

mentioned for preparing and hauling said timber to .other purchaser or purchasers, and the sellers shall receive all the purchase price therefor."

It appears from the language in the decree that the Chancellor construed the last above quoted provision of the Griscom-Moss contract to mean that the party of the first part should have the privilege of selling the timber, in the event some of the mills named therein discontinued taking the same, to any other purchaser or purchasers, for a sum not less than the sum which was being paid by the purchasers named in the contract at the time that contract was made. Such is not the proper construction of the contract. Under the terms of this provision of the contract Moss had the right to sell the timber to any other purchaser, or purchasers, for a sum not less than that which was being paid to Griscom by the purchasers named at the time the delivery and sale to them was discontinued. The record shows that Moss could have at the time the decree was entered, sold the timber to Elberta Crate & Box Company for as much or more than that company was paying for the same at the time of the delivery thereof was discontinued. Therefore, the decree of the Chancellor requiring Moss to find a purchaser within 90 days at the price which prevailed at the time the contract was made was error and he should have been allowed to find a purchaser for the timber at the price which was being paid for it by Alberta Crate and Box Company at the time delivery to Elberta Crate and Box Company was discontinued either because Elberta Crate and Box Company not desiring to buy more timber or because Mr. Griscom, through his agent, had suggested that they terminate the contract.

For the reasons stated, the decree is reversed with directions that a decree be entered which will in effect give Moss

reasonable time in which to produce a purchaser ready, willing and able to pay, and who will pay, on the same terms that the Elberta Crate and Box Company were required to pay, a price equal to or more than the price which was being paid by Elberta Crate and Box Company to Griscom for the pine timber at the time, and immediately before, deliveries were stopped.

It is so ordered.

Reversed with directions.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.